**IN THE UNITED STATES DISTRIC COURT**
**FOR THE DISTRICT OF DELAWARE**

------------------------------------------------------------X
NEDERLAND SHIPPING CORPORATION     :                    19-MC-_____
AND CHARTWORLD SHIPPING            :
CORPORATION,                       :
                                   :
      **Plaintiffs/Petitioners,**         :
v.                                 :
                                   :
UNITED STATES OF AMERICA,          :
                                   :
      **Defendant/Respondent.**           :
------------------------------------------------------------X

## MOTION FOR DECLARATORY RELIEF[1]

**COMES NOW**, Plaintiffs/Petitioners NEDERLAND SHIPPING CORPORATION

("NSC") as Owner of the M/V NEDERLAND REEFER ("the Vessel") and CHARTWORLD

SHIPPING CORPORATION ("Chartworld") as Manager of the Vessel, (collectively

"Plaintiffs/Petitioners"), by and through undersigned counsel, and file this Petition against

Respondent UNITED STATES OF AMERICA ("Defendant/Respondent" or "the government"),

seeking an Order declaring, *inter alia*, the March 8, 2019 Agreement on Security void; directing

the return of the USD 1,000,000 surety bond to Petitioners; finding the government in breach of

the Agreement; and granting Petitioner NSC compensation for the losses, expenses, damages,

and costs incurred as a result of the government's unreasonable delay of the M/V NEDERLAND

REEFER pursuant to 33 U.S.C. § 1904(h).  In support of this action, Petitioners state as follows:

---

[1] Plaintiffs believe the issues raised herein to be ones of first impression because the defendant failed to act in a timely manner upon the signing on the Agreement of Security.  A criminal trial is scheduled for October 7, 2019 in the matter entitled *United States v Nederland Shipping Corporation, et al.*, 19-cr-58 (D. Del.).  Accordingly, time is of the essence and Plaintiffs will file a Motion to Show Cause for an Expedited Briefing Schedule.

## THE PARTIES

1.      Petitioner NSC is a foreign corporation with a registered office address in the Marshall Islands.  NSC is the owner of the M/V NEDERLAND REEFER.  The NEDERLAND REEFER is the only fee earning asset of NSC.

2.      Petitioner Chartworld is a foreign corporation and a Liberian company with offices at Poseidonos Avenue & Zisimopoulou 2, Athens, Glyfada, 16674.  Chartworld is the manager of the NEDERLAND REEFER.

3.      The Respondent is the United States of America.

## JURISDICTION AND VENUE

4.      This Petition states claims for declaratory judgment seeking *inter alia*, to declare the March 8, 2019 Agreement on Security is Null and Void *Ab Initio*, the return of the bond; declaring the government in breach of the Agreement; and holding the government responsible for the losses, expenses, damages, and costs incurred as a result of the unreasonable delay of the M/V NEDERLAND REEFER.

5.      The Court has subject matter jurisdiction over this action pursuant to Article III of the Constitution, 28 U.S.C. § 1331, 28 U.S.C. § 2201, and in accordance with 33 U.S.C. § 1904(h).

6.      The government has waived its sovereign immunity with respect to disputes arising under the Agreement on Security, which states at paragraph 1, lines 73-77, that "Any dispute between the United States and Owner or Operator regarding payment under this paragraph shall be submitted to the United States District Court for the District of Delaware.  In any such dispute wherein one party claims a breach of the terms and conditions herein, the party asserting that there has been a breach of the Agreement shall bear the burden of proof." A copy of the March 8, 2019 Agreement on Security is attached hereto as **Exhibit 1**.

2

7.     Venue is proper in the United States District Court for the District of Delaware pursuant to 33 U.S.C. § 1910(c)(4).

## FACTS AND PROCEDURAL BACKGROUND

### *The Vessel*

8.     The M/V NEDERLAND REEFER, a 13,049 metric ton, highly-specialized reefer vessel built in 1991.

9.     Reefer ships are designed specifically for the carriage of perishable cargo and have reefer engineer(s) onboard to ensure temperature precision for the cargo.  At all relevant times herein, the M/V NEDERLAND REEFER was engaged in seasonal fruit trade from Chile to the United States.

10.     The Vessel operates pursuant to the laws of the Commonwealth of the Bahamas, her Flag State[2] and is certified by Bureau Veritas, her classification society.[3]

11.     The Vessel is the only fee earning asset of her Owner, NSC.

12.     At all relevant times, the Vessel was managed by Chartworld, pursuant to a contract with NSC and in accordance with the International Management Safety ("ISM") Code.[4]

### *Detention of the Vessel*

13.     On or about February 20, 2019, the M/V NEDERLAND REEFER arrived at the Delaware Bay anchorage in order to discharge a cargo of bananas from Chile.

---

[2] "[T]he law of the flag doctrine ... provides that a merchant ship is part of the territory of the country whose flag she flies, and that actions aboard that ship are subject to the laws of the flag state." *United States v. Jho*, 534 F.3d 398 (5th Cir. 2008).

[3] A classification society is a non-governmental organization that establishes and maintains technical standards for the construction and operation of ships and offshore structures. *See* http://www.iacs.org.uk/.

[4]  The ISM Code is an international standard for the safe management and operation of ships and for pollution prevention. *See* www.imo.org.

14.     On February 21, 2019, at approximately 9:00 a.m., Coast Guard officers attended onboard to conduct a Port State Control Inspection of the Vessel.  During the Port State Control Inspection, five (5) alleged deficiencies were identified by Coast Guard personnel and the Vessel was detained.

15.     The Coast Guard boarding team exercised immediate control over the Vessel; including taking over control of the Vessel's crew and the engine room.

16.     The Coast Guard conducted an expanded MARPOL examination in response to the initial alleged deficiency findings.  In addition, several Coast Guard officers and agents, including agents from the Coast Guard Investigative Service ("CGIS")[5], boarded to perform a further criminal investigation.

17.     Multiple interviews of the Vessel's crew were conducted during February 21-22, 2019; during which the crew members consistently and  unequivocally confirmed that any alleged illegal activity, had been specifically hidden from, among others, the Owner of the Vessel NSC, the Vessel's ISM Manager Chartworld, the Captain, as well as the crew members' own manning agent and union representatives.

18.     The alleged misconduct was not done in the course and scope of any of the crew members' employment or agency and was not done with the intent to benefit their employers.

19.     Notwithstanding the clear absence of any evidence to vicariously implicate Petitioners for criminal liability, the Captain of the Port gave notice by letter dated February 22, 2019 that the Vessel was being detained pursuant to 33 U.S.C. § 1908(e) of the Act to Prevent

---

[5] The Coast Guard Investigative Service is a federal law enforcement agency established to carry out the Coast Guard's internal and external criminal investigations.   *See* https://www.uscg.mil/Units/Coast-Guard-Investigative-Service/.

Pollution from Ships ("APPS") and that the departure clearance[6] for the Vessel could be reinstated only once ". . . *adequate surety has been provided to this office, we will notify CBP and request they grant departure clearance for M/V NEDERLAND REEFER.*" Customs and Border Protection were also provided notice of the revocation of the Vessel's departure clearance by the Captain of the Port on the same day. *See* copy of Captain of the Port Letters dated February 22, 2019, attached as **Exhibit 2**.

20.     When Petitioners attempted to communicate with the CDR Robert Pirone, the designated point of contact for the Coast Guard's Fifth District Legal Office to make arrangements for security, Petitioners were informed on February 23, 2019 that the United States was unable to articulate a demand for surety.

### *Surety Negotiations*

21.     At or about the close of business, some twelve (12) days later, on March 7, 2019, CDR Pirone confirmed that the matter had been referred to the Department of Justice for criminal prosecution. CDR Pirone further stated "As you know, there is currently a Customs Hold on the vessel. Since a criminal referral has been accepted by DOJ, in order for the vessel to depart and the Customs Hold to be lifted, the US will require that a Surety Bond be posted and that a Security Agreement be executed between the US and the Vessel's Owner and Operator." *See* **Exhibit 3**, Email from CDR Pirone dated March 7, 2019.

22.     Although the government referenced that it would negotiate the "Security Agreement", in actuality nearly all of onerous terms required in the Agreement on Security were and are non-negotiable.

---

[6] Pursuant to 46 U.S.C. § 60105(b), a foreign-flagged ship must obtain departure clearance from CBP before it may depart a U.S. port, and under APPS, the Coast Guard may request CBP to withhold such clearance for established or suspected APPS violations until "the filing of a bond or other surety satisfactory to the Secretary." *See* 33 U.S.C. § 1908(e).

23.     The only terms which the government was willing to negotiate with respect to the Agreement on Security was the per diem to be paid by Petitioners to the human collateral demanded by the government.  Specifically, the government's initial unreasonable demand of $50 per day, per person was later reduced to $35 per day, per person.

24.     The Agreement on Security was executed and signed on March 8, 2019.  *See* **Exhibit 1**.

25.     A surety bond issued by International Sureties in the amount of USD 1,000,000, was posted the same day.  An electronic copy was provided to CDR Pirone and the original bond was hand delivered to the Eighth District Legal Office in New Orleans, Louisiana.  *See* **Exhibit 4**.

26.     On the same day, CGIS agents attended onboard the Vessel to serve eleven (11) of the crewmembers with subpoenas to attend before the grand jury on April 11, 2019.

27.     The Captain of the Port Letter withholding the Vessel's departure clearance was rescinded, however, the Vessel was not permitted to continue her journey and trade for another nineteen (19) days.

### *The Detained Crew and Delay of the Vessel*

28.     Critically, the Agreement on Security required that "At the request of the U.S. Coast Guard acting on behalf of the United Stets, the ships officer and crewmembers listed within subpart (a) of this paragraph ("Paragraph 3") *shall* remain within the jurisdiction of the U.S. District Court – District of Delaware pursuant to the terms set forth within the below subparts.  (a) The ship's officers and crewmembers pertaining to this paragraph are:

1. Aleev, Roman – Master;

2. Chernyak, Oleksandr – Chief Officer;

  3. Mazarakis, Vasileios – Chief Engineer;

  4. Bakayenko, Roman – Second Engineer;

  5. Politis, Filippos – Third Engineer;

  6. Pantaleon, Ronnel – Fourth Engineer;

  7. Narca, Julius – Able Seaman;

  8. Penafiel, Xavier Dirk – Ordinary Seaman;

  9. Bijer, Adonis – Oiler;

  10. Canto, Elmer – Oiler;

  11. Caracuel, Manolito – Oiler;

  12. Kakol, Jacek – Fitter;

  13. Tanchuan, Roberto - Electrician

*See* **Exhibit 1**, ¶ 3(a), ln.101-118 (emphasis added).

29. The aforementioned crewmembers held valid U.S. Visas upon their arrival into U.S. waters onboard the Vessel on or about February 21, 2019.

30. The Agreement on Security further imposed the following condition, "(c) Owner and Operator agree that the Vessel shall not depart forthwith for the remainder of its voyage until the aforementioned ship's officers and crewmembers of the Vessel have been granted immigration status necessary to enable them to remain in the United States commensurate with the duration of this Agreement.  Owner and Operator agree that no ship's officer or crewmember will be allowed to remain aboard that Vessel when it departs from the United States . . ." *Id*. at ¶ 3(c).

31. Arrangements for the necessary immigration status or parole into the United States takes no more than a few hours and can (and often is) completed quicker.

32.     Upon information and belief, there has never been any other matter in which there was such an unreasonably long delay of the Vessel.

33.     Notably, the government affirmatively agreed to "take reasonable measures to expedite the investigation of the Alleged Violations and any subsequent proceedings," which it did not do. *Id.* at ¶ 4.

34.     Despite the government's demand that crewmembers be removed from their shipboard homes as an express condition of the Agreement on Security, at the time the Agreement was negotiated and signed, the government, acting by and through its agencies, including but not limited to the United States Coast Guard, Coast Guard Investigative Service, U.S. Customs and Border Protection, Department of Homeland Security, and Homeland Security Investigations, could not commit to the detained crewmembers ***ever*** having parole status approved.

35.     It all points to the conclusion that at the time the government signed the Agreement on Security, which led the Petitioners to sign and post security, the government was not aware <u>if</u> the crew would be paroled.

36.     On March 9, 2019, in response to a request from the Vessel's agent to repatriate two (2) crewmembers who were not included in the Agreement on Security, Assistant Area Port Director Donald J. Josey of CBP confirmed that CBP Wilmington would not be processing any of the crewmembers required by the government to be detained in the United States stating: "while the US Coast Guard has released this Vessel from their custody CBP has received a formal request from the Resident Agent-in-Charge, Coast Guard Investigative Service (CGIS), Philadelphia, requesting more than 10 crewmen be paroled into the United States as a further

action of this vessel. ***CBP is waiting for their documentation of Parole to be presented to this office***." *See* **Exhibit 5**, Email from Donald J. Josey. (emphasis added).

37.     On March 11, 2019, the government was informed that all replacement crewmembers were on board and had completed handover of the Vessel from the thirteen (13) crewmembers required by the government to be detained in the District of Delaware. Notwithstanding, CBP ignored the Vessel agent's calls and messages seeking to parole the detained seafarers into the United States.  *See* **Exhibit 6**, March 11 Email of George M. Chalos.

38.     The government repeatedly ignored messages from counsel for Petitioners and failed, neglected, and/or refused to respond to requests for updates on the status of the processing of the detained crewmembers.  *See* **Exhibit 7**, March 12 Email of George M. Chalos.

39.     Following a full day of the government failing to provide any substantive update, the government was put on notice that the five (5) day (and counting) delay of the Vessel was unprecedented and unreasonable under the facts and circumstances of the matter.  In addition, the government was put on notice that the failure to process the disembarkation of the detained crewmembers by March 13, 2019 would lead to irreparable harm and commercial damages to Petitioners as the banana cargo season was coming to a close.  *See* **Exhibit 8**, March 12, 2019 Email of George M. Chalos.

40.     On March 13, 2019, CDR Pirone stated "No new news to pass. . .  "paperwork has been submitted to HSI and is being processed." *See* **Exhibit 9**, March 13, 2019 Email of CDR Robert Pirone.

41.     Later that same day, the government, through DOJ attorney David Kehoe confirmed that CGIS was meeting with HSI to get parole cleared.

42.     Notwithstanding, the government still had "no news to report" and repeatedly ignored the Vessel agent's requests to arrange for the parole of the crewmembers into the United States.  *See* **Exhibit 10**, March 14, 2019 Email of George M. Chalos.

43.     Petitioners repeated that the failure to permit the Vessel to sail by March 15, 2019 would cause significant and unnecessary damages as the Vessel "is in a specialized reefer/fruit trade.  If the vessel is not underway within tomorrow at the very latest, she will miss her next commercial commitment.  This will result in significant damages, which will be at least seven and likely eight figures in quantum." *See* **Exhibit 11**, March 14, 2019 Email of George M. Chalos.  Petitioners relied on the implications under the Agreement on Security once signed, i.e., that the Vessel would be allowed to depart within a reasonably short time and to allow the Vessel's charterers to schedule accordingly.

44.     Again, the government neglected, refused, and/or failed to respond to any alternative arrangements for the disembarking crew. *Id.*

45.     The government confirmed on the afternoon of March 14, 2019 that there was no news to report and that "No estimate has been given to the USCG as to when the vetting/processing will be complete (hopefully very soon). We have requested that the applications be expedited. We will continue to monitor and inquire as we have been for the past several days. Will let you know as soon as we hear something more definitive." *See* **Exhibit 12**, March 14, 2019 Email of CDR Pirone.

46.     Petitioners immediately responded and requested information as to whether any other arrangements could be made so that the Vessel could sail by March 15, 2019.  *See* **Exhibit 13**, March 14, 2019 and March 15, 2019 Emails of George M. Chalos.  No response was provided by the government.

47.     The government engaged in a series of agency finger-pointing and blaming, but ultimately could not provide a substantive answer as to why local CBP could not provide temporary parole to the U.S. Visa holding crewmembers the government was requiring to be detained and could not explain why it was taking so long for CBP/HSI/CGIS to clear and parole the thirteen (13) crewmembers.   All written requests for explanation and/or alternative arrangements were ignored. *See* **Exhibit 14**, March 15, 2019 Email of George M. Chalos.

48.     Following several chasers and reminders, CDR Pirone finally responded on March 19, 2019 to simply state that "[w]e did check in with HSI today and they confirmed again that the applications are actively being processed." *See* **Exhibit 15**, March 19, 2019 Email of CDR Robert Pirone.

49.     Petitioners pressed the government agents and lawyers (again) for responses to simple and straightforward responses to the following questions:

- Why the local CBP area port director has failed, neglected or otherwise refused to provide temporary parole to the Visa-holding crew members the government seeks to detain in Delaware?

- Why is it taking ~~7+ days~~ 12 days and counting for CBP to clear and parole the thirteen (13) crew members the government is seeking to detain?

- What, precisely, is different between the investigation/background check performed when issuing a foreigner a US Visa and the process which has been alleged by USCG and DOJ to be the cause of the delay here?

- Why is the process relating to vessels/seafarers in Delaware completely unlike anywhere else in the US?; and

- How much longer is it going to take to get the crew the government seeks to detain moved to hotels and get the vessel back to her journey and trade?

*See* **Exhibit 16**, March 19, 2019 Email of George M. Chalos.

50.     No response was ever received from the government.

51.     Repeated requests for the names and contact numbers of the agents and supervisors at HSI handling the processing of the parole request were sent to government counsel and all such requests went without reply.

52.     On March 20, 2019, Petitioners reminded the government that it was a long-standing and routine practice of CBP to find an appropriate "exception to every rule" when and if it needed to.  Notwithstanding, the government failed, neglected, and/or refused to do the necessary to process the disembarkation of the detained crewmembers timely as required by the Agreement on Security. *See* **Exhibit 17**, March 20, 2019 Email of George M. Chalos.

53.     Assistant Area Port Director Josey re-confirmed on March 22, 2019 that "CBP continues to wait for CGIS to present the crewmembers, along with their proper parole paperwork to this office. The process of obtaining the Paroles is solely between CGIS and HSI. While the crewmembers may have valid crew visas, their classification doesn't meet the purpose of why they are being admitted." *See* **Exhibit 18**, March 22, 2019 Email of Donald Josey and George M. Chalos.

54.     Despite Assistant Area Port Director Josey's stated willingness to try and move the ball forward, the Vessel sat at the anchorage through the weekend while the government failed, neglected, and/or refused to provide any update or response to Petitioners' requests for information on March 25 and March 26, 2019 and/or to take action.  *See* **Exhibit 19**, March 25 and 26, 2019 Emails of George M. Chalos.

55.     After the close of business on March 27, 2019, CDR Pirone confirmed that the parole paperwork was completed by HSI and stated that transfer of the crewmembers shoreside would take place on March 28, 2019.  *See* **Exhibit 20**, March 27, 2019 Email of CDR Robert Pirone.

56.     The Vessel was finally permitted to continue her journey and trade and sail from Delaware Bay, after an unreasonably long thirty-six (36) day delay; including an additional nineteen (19) days <u>after</u> signing the Agreement on Security and, *inter alia*, posting a USD 1,000,000 surety bond.

57.     As a result of the unreasonable day delay to the vessel, NSC has incurred direct damages estimated to be no less than $277,000 for off-hire, additional bunkers, port expenses, wages, accommodation and victualing.

58.     In addition, the consequential damages resulting from the reputational and business damages caused by the Vessel missing its subsequent obligations as a result of the government's unreasonable delay are not yet quantifiable, but may well be significant and well beyond the jurisdictional minimum of this Court.

## COUNT ONE – DECLARATORY JUDGMENT
### Agreement on Security is Null and Void *Ab Initio*

59.     Petitioners incorporate by reference and re-allege as though fully set forth herein, each and every allegation as set forth in the preceding paragraphs of this Petition.

60.     Pursuant to 28 U.S.C. § 2201, an actual case or controversy exists as a result of the claims of the government against Petitioners relating to the alleged violation(s) of the Act to Prevent Pollution from Ships, 33 U.S.C. § 1901, *et. seq.*

61.     Petitioners request that the Court enter judgment finding that:

a.  The government imposed non-negotiable obligations on Petitioners NSC and Chartworld, to among other things, agree that thirteen (13) crewmembers would not be able to depart with the Vessel and would have to remain in the District of Delaware;

b.   At the time that this non-negotiable obligation was imposed on Petitioners, the government had no information, knowledge, confirmation, and/or ability to commit the government to ensure that the thirteen (13) crewmembers could remain in the United States of America as required by the Agreement on Security;

c.   At the time that the Agreement on Security was entered into by the Petitioners and the government, the government actors had no information, knowledge, confirmation, and/or ability to commit that the thirteen (13) crewmembers would be granted parole status by the U.S. Customs and Border Protection Agency and/or Homeland Security Investigations; and as a result, effectively misleading Petitioners;

d.   The Agreement on Security is null and void *ab initio* as the government forced Petitioners into an agreement which it could not perform and had no information, knowledge, confirmation, and/or ability to ensure that the agreement would ever be performed;

e.   That the USD 1,000,000 surety bond be immediately returned to Petitioners; and

f.   That Petitioners are no longer obligated to comply with the obligations and terms contained in the Agreement on Security.


**COUNT TWO – BREACH OF CONTRACT**

62.   Petitioners incorporate by reference and re-allege as though fully set forth herein, each and every allegation as set forth in the preceding paragraphs of this Complaint.

63.     The government's failure, refusal, and/or neglect to expeditiously and reasonably process the parole of the thirteen (13) detained crewmembers was a breach of the Agreement on Security.

64.     Specifically, the United States breached, *inter alia*, Clauses 3 and 4 of the Agreement on Security.

65.     As a result of the government's breach of contract, Petitioners have suffered significant damages and losses.

66.     Petitioners request that the Court enter judgment finding that the government breached the Agreement on Security.

### COUNT THREE – COMPENSATION FOR UNREASONABLE DELAY

67.     Petitioners incorporate by reference and re-allege as though fully set forth herein, each and every allegation as set forth in the preceding paragraphs of this Complaint.

68.     NSC is the Owner of the M/V NEDERLAND REEFER, which was unreasonably delayed for nineteen (19) days from the period of March 9, 2019 to March 28, 2019.

69.     NSC is pursuing this action for compensation as authorized by *inter alia*, 33 U.S.C. § 1904(h).

70.     Petitioner NSC requests that the Court enter judgment finding that:

   a. NSC is entitled to compensation for the unreasonable delay of the Vessel which has caused no less than $277,000 in damages, costs, and expenses for off-hire, additional bunkers, port expenses, wages, accommodation and victualing; and

   b. That NSC is entitled to compensation for consequential damages resulting from the reputational and business damages caused by the Vessel missing its

intended and planned subsequent voyage as a result of the government's unreasonable delay in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Petitioners respectfully request that the Court enter a judgment:

A. Granting Count One and declaring the March 8, 2019 Agreement on Security void and directing the return of the USD 1,000,000 surety bond to Petitioners;

B. Finding the government in breach of the Agreement on Security;

C. Granting Petitioner NSC compensation for the losses, expenses, damages, and costs incurred as a result of the government's unreasonable delay of the M/V NEDERLAND REEFER pursuant to 33 U.S.C. § 1904(h);

D. Awarding Petitioners their attorneys' fees and interest; and

E. Awarding Petitioners such other, further, and different relief as the case may require and the Court may deem just and proper under the circumstances.

Dated: July 8, 2019

Respectfully submitted,
**BARNARD MEZZANOTTE PINNIE
and SEELAUS, LLP**


/s/ Anne Kai Seelaus
Anne Kai Seelaus (Bar No. 4970)
222 Delaware Ave., 7th Floor
P.O. Box 26304
Wilmington, DE 19899
Telephone: (302) 552-2939
Facsimile: (302) 574-7401
Email: kseelaus@bmplaw.net
Attorney for Plaintiffs/Petitioners

**Of counsel:**
George M. Chalos *(pro hac vice in progress)*
Briton P. Sparkman *(pro hac vice in progress)*
**CHALOS & CO, P.C.**
55 Hamilton Avenue
Oyster Bay, New York 11771

16

Telephone: (516) 714-4300
Facsimile: (516) 750-9051
Email: gmc@chaloslaw.com
        bsparkman@chaloslaw.com